**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **And** | ) | **CASE NO. 4:20-CV-01099 LPR** |
| | ) | |
| **BRENDA LAWSON and TRUDY RICKARD** | ) | |
| | ) | |
| **PLAINTIFF INTERVENORS** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KROGER LIMITED PARTNERSHIP I d/b/a KROGER STORE NO. 625,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

---

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY'S COMMISSION**
**MEMORANDUM IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT**

---

## INTRODUCTION

Plaintiff Equal Employment Opportunity Commission (the Commission) brings this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2, the disparate treatment provision of Title VII, and Title I of the Civil Rights Act of 1991, 42 U.S.C. Section 1981a, against Defendant Kroger Limited Partnership I, d/b/a Kroger Store No. 625 (Kroger). This case concerns Kroger's failure to provide a religious accommodation to the sincerely held religious beliefs of Brenda Lawson (Lawson) and Trudy Rickerd (Rickerd), two former Kroger employees, and

Kroger's retaliatory action for their failure to comply with a uniform requirement that violated their religious belief.

Lawson and Rickerd hold a sincere religious belief that wearing the multicolored heart emblem apron introduced by Kroger in April 2019 represented the LGBTQ+ community. By wearing such apron,  Lawson and Rickerd believed this would show their endorsement of the LGBTQ+ in violation of their Christian beliefs. While not holding any ill feelings against the LGBTQ+ community and never exhibiting any improper conduct in the workplace against any employees because they were members of the LGBTQ+ community[1], Lawson and Rickerd requested orally and in writing several times that Kroger grant them a religious accommodation. Kroger denied Lawson and Rickerd's requests, disciplined them, and discharged them. Kroger cannot dispute the sincerely held religious belief of Lawson and Rickerd because Kroger never engaged in an interactive process to determine the sincerity of their belief.

Kroger does not raise an undue hardship defense in its Answer to the Complaint.  See Document No. 19, Answer to Complaint. Kroger would not have incurred any monetary expense by accommodating Lawson and Rickerd. The Commission contends Kroger could have easily granted the requests of Lawson and Rickerd for a religious accommodation without an undue hardship on the business by simply allowing Lawson to cover up the heart emblem with her nametag or by allowing Lawson and Rickerd to purchase another apron. Accommodating the religious beliefs of Lawson and Rickerd would not have led to discrimination against their coworkers; nor would Kroger have suffered any disruption to the workplace by accommodating

---

[1] Kroger has a record of an anonymous complaint against "Trudy" no last name that alleges a toxic environment for a transgender employee. Store Manager Maxwell was unaware of the allegations and Riddley apparently never brought the matter to Rickerd's attention because Riddley, the person tasked with investigating the complaint, did not even know if the "Trudy" in the complaint referred to Trudy Rickerd. (Ex 2, Maxwell at p. 54; Ex 1, Riddley at p. 38).

Lawson and Rickerd. Kroger has no defense for its failure to accommodate the sincerely held religious beliefs of Lawson and Rickerd.

Again, despite Kroger's easy ability to accommodate the religious beliefs of Lawson and Rickerd, Kroger denied them a religious accommodation and ultimately discharged them for violating Kroger's uniform policy. The Commission asserts that the religious beliefs of Lawson and Rickerd were the motivating factor in Kroger's decision to discharge them, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-2(a)(1).

## PROCEDURAL BACKGROUND

The Commission filed this lawsuit on September 14, 2020, on behalf of Lawson and Rickerd. The Commission alleges Kroger violated Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991 when Kroger failed to accommodate the sincerely held religious beliefs of Lawson and Rickerd and then discharged them. The Commission further alleges in its lawsuit that Kroger discharged Lawson and Rickerd in retaliation for their refusal to follow Kroger's dress code, a dress code that conflicted with their religious beliefs.

Lawson and Rickerd filed a Complaint in Intervention on October 8, 2020. The Commission filed an Amended Complaint on June 15, 2021, to correct Kroger's name.

Because there are no material facts in dispute related to the Commission's claims of religious discrimination and retaliation, the Commission contends this Court should grant it judgment as a matter of law.

## FACTUAL BACKGROUND

### Brenda Lawson

Brenda Lawson (Lawson) began work as a deli clerk for Kroger at Store 625 in Conway, Arkansas,  on September 6, 2011. (Ex 12, Lawson hire document). Lawson worked in the deli

throughout her employment with Kroger and loved her job. (Ex 7, Lawson at pp. 8, 16). Store Manager Sean Maxwell believed Lawson was a good employee and never had issues with Lawson's job performance. Maxwell never had any reason to doubt Lawson's honesty/truthfulness. (Ex 2, Maxwell at pp. 37-38). Prior to Maxwell's transfer to Store 625, Lawson received one SIR documentation in her file in 2013 for an unexcused absence. (Ex 13, Lawson writeup prior to Maxwell's arrival).

Lawson believes homosexuality is a sin, that it goes against the teachings of the Bible, and that it goes against her religious beliefs. Lawson believes in a literal interpretation of the Bible which states that a man shall not lie with a man.[2] (Ex 7, Lawson at pp. 79, 116). And while Lawson believes homosexuality is a sin, she believes in equality in the workplace for the LGBTQ+ community and has no problem with homosexuals as individuals. (Ex 7, Lawson at p. 39). In fact, Lawson has friends and family who are homosexuals, and Lawson considered a transgender coworker with whom she worked at Kroger her friend. (Ex 7, Lawson at p. 39).

While Lawson has nothing personally against homosexuals, because she believes that lifestyle is a sin, her religious beliefs prohibit her from wearing something that she believes supports the LGBTQ+ community. And therein lies the problem and the crux of this case.

In April 2019 when Kroger adopted a new dress code that included an apron with a multicolored heart emblem, Lawson believed the heart was representative of the rainbow flag adopted by the LGBTQ+ community and reflected Kroger's support for the LGBTQ+ community (Ex 7, Lawson at pp. 35-36).

Because supporting the LGBTQ+ community conflicted with Lawson's religious beliefs, she requested a religious accommodation—she asked to wear an apron without the heart emblem

---

[2] "Man must not lie with man" (Leviticus 18:22, 20:13).

which she would purchase herself, she asked to turn down the bib of the apron so the heart emblem would not show, and she asked to wear her nametag over the heart emblem. (Ex 7, Lawson at p. 46). Lawson submitted four separate, written requests for a religious accommodation pertaining to the apron. (Ex 14, Lawson accommodation requests).

As early as May 4, 2019, the Delta Division Human Resources Department knew there were employees in Store 625 who objected to wearing the apron with the multicolored heart emblem on religious grounds; (Ex 24, Maxwell May 4, 2019 emails to Riddley). Besides providing Riddley with Rickerd's written accommodation request, Maxwell also provided Riddley with a letter from David Hogue, counsel for Plaintiff-Intervenors. (Ex 25, David Hogue May 4, 2019 letter to Maxwell). Hogue's letter mentioned other Kroger employees in addition to Lawson and Rickerd who objected to wearing the heart emblem. (see exhibit 25). In spite of this early knowledge, Human Resources Director Sheryl Riddley did not meet with Lawson until May 21, 2019. (Ex 1, Riddley deposition at p. 42). The purpose of Riddley's meeting with Lawson was not to discuss Lawson's accommodation request; Riddley's purpose was simply to get the facts, just the facts.

Delta Division Human Resources Leader Kevin Lindsey and Total Rewards and Associate Relations Manager Andrea Wilson made the decision to discharge Lawson without ever meeting with Lawson or discussing with Lawson ways Kroger might accommodate Lawson's religious believes. (Ex 29, Lindsey 30(b)(6) deposition at p. 35; Ex 17, Lindsey fact deposition at p. 12; Ex 18, Wilson at p. 41). Kroger discharged Lawson effective June 1, 2019, solely for violating Kroger's dress code. (See exhibit 16 at page four).

**Trudy Rickerd**

Rickerd began working for Kroger at Store 625 in Conway, Arkansas,  as a cashier on October 5, 2006. (Ex 19, Rickerd hire date). Rickerd worked in file maintenance at the time of her

termination. (Ex 8, Rickerd at pp. 42-43). Store Manager Sean Maxwell believed Rickerd a good employee and never had issues with Rickerd's job performance, nor did Maxwell ever have any reason to doubt Rickerd's honesty/truthfulness. (Ex 2, Maxwell at pp. 37-38). Before Maxwell's transfer to Store 625, Rickerd had one SIR documentation in her file from 2010 for excessive key rings. (Ex 20, Rickerd writeups prior to Maxwell's arrival at the store).

Rickerd believes homosexuality is a sin and that it contravenes her religious beliefs. (Ex 10, Rickerd at p. ). And like Lawson, while Rickerd believes homosexuality is a sin, she believes in equality in the workplace for the LGBTQ+ community. (Ex 8, Rickerd at pp. 26-27).

While Rickerd has nothing personally against homosexuals, because she believes that lifestyle is a sin, her religious beliefs prohibit her from wearing something that she believes endorses the LGBTQ+ community. In April 2019 when Kroger adopted a new dress code that included an apron with a multicolored heart emblem, Rickerd believed the heart was representative of the rainbow flag adopted by the LGBTQ+ community and reflected Kroger's support for the LGBTQ+ community (Ex 8, Rickerd at pp. 18-19). God told Rickerd, in so many words, that Rickerd could not wear the apron because the multicolored heart emblem represented the LGBTQ+ community. (Ex 8, Rickerd at pp. 18-19).

Because endorsing the LGBTQ+ community conflicts with Rickerd's religious beliefs, Rickerd requested a religious accommodation—she asked to purchase her own apron, one without the multicolored heart emblem. (Ex 8, Rickerd at p. 9). Rickerd submitted her written request for a religious accommodation on May 3, 2019. (Ex 21, Rickerd accommodation request).

On May 4, 2019, Store Leader Sean Maxwell faxed Rickerd's accommodation request and one of his disciplinary actions against Rickerd to Sheryl Riddley in the Delta Division Human Resources Department. (Ex 24, Maxwell May 4, 2019 emails to Riddley). Despite this early

knowledge, Riddley did not meet with Rickerd until May 21, 2019. (Ex 1, Riddley deposition at p. 42). The only purpose of Riddley's meeting with Rickerd was to investigate the allegation, i,e. to get the facts, to write a report, and to send her report up the management chain. Riddley's purpose was not to attempt a resolution. (Ex 1, Riddley at pp. 17, 21).

Kevin Lindsey and Andrea Wilson made the decision to discharge Rickerd without ever meeting with Rickerd or discussing with Rickerd ways Kroger might accommodate Rickerd's religious belief. (Ex 29, Lindsey 30(b)(6) deposition at p. 35; Ex 17, Lindsey fact deposition at p. 12; Ex 18, Wilson at p. 41). Kroger discharged Rickerd effective May 29, 2019, solely for violating Kroger's dress code. (See exhibit 23 at page five).

**General Background**

Kroger introduced its new aprons and dress code to the stores in the Delta Division, which included Store 625 in Conway, Arkansas,  on or about April 15, 2019. (Ex 26, Fresh New Look document). The new dress code permitted Kroger employees to wear their own clothes but required employees to wear a dark blue apron with an embroidered, multicolored heart emblem on the left side of the bib. (Ex 4, Dress code; Ex 27, Image of multicolored heart). On the inside of the apron bib and unseen by Kroger customers, Kroger listed its promise. (See exhibit  27 at page 2).

 Kroger denies that the multicolored heart emblem has anything to do with the LGBTQ+ community; in fact, Kroger states the heart stands for everyone friendly and caring, everything fresh, uplifting everyone, and constantly improving for associates and customers, (Ex 29, Lindsey (30(b)(6) deposition at p. 32). About one month prior to announcing its new dress code to store employees, however, Kroger announced through a corporate press release that Kroger was named one of the best places to work for the LGBTQ+ community. (Ex 6, March 28, 2019 press release). The closeness of the timing between this press release and Kroger's new dress code caused many

employees in Store 625 to believe the multicolored heart on the apron was a "rainbow" heart endorsing the LGBTQ+ community. (Ex 7, Lawson at pp. 85-86; Ex 10, Brockman at p. 27; Ex 11, Uekman at pp. 16-18).[3]

Kroger indicates it could not permit Lawson's and Rickerd's the meaning of the heart to supersede the meaning of the heart that Kroger was trying to communicate to the community and to its associates.. (Ex 29, Lindsey 30(b)(6) deposition at pp. 31-32). Kroger's argument would have more merit if Kroger required every single Kroger employee in a Kroger store to wear the apron with the multicolored heart emblem visible to customers and other employees. Kroger, however, did not mandate this requirement for all employees.

Pharmacy department employees, Murray's Cheese Shop department employees, and Starbucks department employees in the Kroger store did not wear the apron; meat department employees and bakery department employees in the Kroger store wore white coats over their aprons; and supervisors and scan-bag-go clerks in the Kroger store, if such positions were available, wore red vests over the apron. (Ex 2, Maxwell at pp. 48, 50-52); Ex 5, Apron FAQs).

Kroger's argument would also have more merit if Kroger had disciplined other employees who failed to follow the dress code with regard to the apron. Maxwell testified he did not issue discipline to any other employees who failed to follow the dress code—other than Lawson and Rickerd. (Ex 2, Maxwell at p. 68, Ex 30, Maxwell May 6, 2019 email). And Kroger cannot rely on it argument that it was unaware that other employees were not following the dress code. Noah Judy testified Maxwell asked him on more than one occasion to wear the apron, yet Maxwell never disciplined Judy for these failures; they only had "conversations." (Ex 2, Maxwell at p. 65; Judy at

---

[3] It is unknown why Kroger waited until late March to issue its press release announcing its award as one of the best places to work for the LGBTQ+ community since Kroger won this same award in 2020 and 2021 but issued those press releases in January of those years. (Ex 28, Kroger 2020 and 2021 press releases).

p. 22). Brockman told an EEOC investigator that Maxwell saw her on numerous occasions without her apron and never said anything to her. Brockman also told the investigator that she even directed management's attention to employees who were not wearing uniforms. (Ex 31, Brockman EEOC interview at page three). Maxwell also saw Uekman on more than one occasion without her apron, yet Maxwell never disciplined Brockman or Uekman. (Ex 2, Maxwell at pp. 65-66, 99). Significantly, Kroger did not even discipline an employee who disfigured her apron by using a magic marker to color the emblem entirely in red. Kroger simply provided the employee a new apron. (Ex 17, Lindsey fact deposition at p. 21).

Store Manager Maxwell testified that on a day shift, the average number of employees in the store was between 80 to 100. Around 15 t0 18 of those employees fell into the category of employees who either never wore the apron or who wore the apron with the multicolored heart emblem covered. (Ex 2, Maxwell at p. 52). Using basic math on any given day 15 to 22% of the employees working at Store 625 did not have a visible heart emblem. Despite these numbers, Kroger refused to permit Lawson and Rickerd, two employees with sincerely held religious beliefs, to avoid wearing the multicolored heart emblem.

## SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a genuine issue of material fact is presented will be determined by asking if a reasonable jury could return a verdict for the non-moving party. *Id*. The

moving party bears "the initial responsibility of informing the district court of the basis of its motion and identifying those portions of the record that show the lack of a genuine issue. *Hardnagel v. v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). If the nonmoving party fails to establish a factual dispute on an essential element of its case, the court must grant summary judgment for the moving party. *Simpson v. Des Moines Water Works*, 425 F.3d 538,542 (8th Cir. 2005).

Because there is no factual dispute that Kroger refused to accommodate the sincerely held religious beliefs of Lawson and Rickerd and then discharged them in violation of Title VII, summary judgment in favor of the Commission therefore is appropriate.

## ARGUMENT AND AUTHORITY

### Kroger's Failure to Accommodate Lawson's and Rickerd's Sincerely Held Religious Beliefs

Title VII provides "it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion" 42 U.S.C.2000e-2(a)(1). Title VII defines "religion" as including all aspects of religious observance and practice, **as well as belief**, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business. (Emphasis added).

In *EEOC v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 772 (2015), the late Justice Scalia, writing for the majority, held that the above disparate-treatment provision forbids employers to (1) "discharge any individual;" (2) "because of;" (3) "such individual's …religion." Justice Scalia explained that "because of" in Section 2000e-2(a)(1) "links the forbidden consideration to each of the verbs preceding it; an individual's actual religious [belief] may not be

a motivating factor in…discharge." *Id.* at 773. Similarly, Justice Alito, concurring in the majority

opinion in *Abercrombie & Fitch Stores*, 575 U.S. at 776 noted:

> When these two provisions [Section 2000e-2(a)(1) and
> Section 2000e(j)] are put together, the following rule
> (expressed in somewhat simplified terms) results: An
> employer may not take an adverse employment action
> against an …employee because of any aspect of that
> individual's religious [belief] unless the employer demonstrates
> that it is unable to reasonably accommodate that observance
> or practice without undue hardship.

"Thus, religious [beliefs] is one of the protected characteristics… that cannot be accorded

disparate treatment and must be accommodated.: *Id.* at 775.

While the Supreme Court does not offer examples of reasonable accommodation, in *Wilson*

*v. U.S. West Communications*, 58 F.3d 1337, 1341-42 (8th Cir. 1995), the Eighth Circuit explains

what constitutes a reasonable accommodation. There, Wilson, a Roman Catholic, sought to be a

living witness for God against abortions. Wilson held a religious belief that required her to wear

an anti-abortion button that showed a color photograph of a fetus. Because the button created

commotion in the workplace and employees lodged complaints about the button, U.S. West offered

Wilson three accommodation choices: (1) allow Wilson to wear the button only in her cubicle; (2)

require Wilson to cover the button while at work; or (3) allow Wilson to wear a different button

with the same message but without the photograph. Wilson refused and U.S. West discharged her.

The trial court held that U.S. West's requirement that Wilson cover her button at work was a

reasonable accommodation because it allowed Wilson to wear the button while also eliminating

office conflict. The Eighth Circuit affirmed the trial court's decision finding that U.S. West did not

have to make Wilson's co-workers ignore the button because doing so would be "antithetical to

the concept of reasonable accommodation" and that U.S. West's proposal allowed Wilson "to

comply with her vow to wear the button and respected the desire of co-workers not to look at the button." *Id* . at 1341–42. The court stated: "We reiterate that Title VII does not require an employer to allow an employee to impose his religious views on others. The employer is only required to reasonably accommodate an employee's religious views." *Id.* at 1342.

Here, neither Lawson nor Rickerd sought to impose their religious views on others at Kroger. They simply desired a reasonable accommodation for their religious beliefs. Kroger denied their requests. Rather, Kroger desired that Lawson and Rickerd ignore the multicolored heart emblem on the apron and wear the apron because of what Kroger said it represented, irrespective of their views on the apron's emblem. Kroger's directive was "antithetical to the concept of reasonable accommodation."

## I.     *Prima Facie* Elements for Religious Discrimination

"An employee establishes a *prima facie* case of religious discrimination by showing that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this belief; (3) the employee was disciplined for failing to comply with the conflicting employment requirement." *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). As discussed below the Commission establishes a *prima facie* case for both Lawson and Rickerd.

### A.  Bona Fide Religious Beliefs

### 1.   Lawson's Bona Fide Religious Belief

Based on her testimony, Lawson shows that she holds a sincerely held religious belief that homosexuality goes against her religious beliefs. Lawson testified under oath that she believes in a literal interpretation of the Bible, and the Bible states that a man shall not lie with a man. (Ex 7, Lawson at p. 79)  While no one from Kroger management inquired into the sincerity of Lawson's

beliefs (Ex 17, Lindsey fact deposition at pp. 12, 15-17; Ex 18, Wilson at pp. 30-31). Store Manager Maxwell testified that he had no reason to doubt Lawson's honesty or truthfulness. (Ex 2, Maxwell at pp. 37-38). Lawson's convictions are also evidenced by her continued refusal to conform to Kroger's dress code to the point it cost her the job.

Besides verbalizing her religious beliefs, Lawson submitted multiple written accommodation request stating she held a sincerely held religious belief that she could not wear an emblem that promoted or supported the LGBTQ+ community. (Ex 14, Lawson accommodation requests). The Commission, therefore, satisfies the first prong of its *prima facie* burden for Lawson.

### 2.  Rickerd's Bona Fide Religious Belief

Based on her testimony, Rickerd shows she holds a sincerely held religious belief that homosexuality conflicts with her religious beliefs. Rickerd testified under oath that God told her she could not wear the apron because of its association with the LGBTQ+ community. (Ex 8, Rickerd at pp. 70-71, 76-77). Additionally, while no one from Kroger management inquired into the sincerity of Rickerd's beliefs (Ex 17, Lindsey fact deposition at pp. 12, 15-17; Ex 18, Wilson at pp. 30-31), Store Manager Maxwell testified that he had no reason to doubt Rickerd's honesty or truthfulness. (Ex 2, Maxwell at pp. 37-38). Rickerd's convictions were also evidenced by her continued refusal to conform to Kroger's dress code to the point it cost her the job.

Besides verbalizing her religious beliefs, Rickerd submitted a written accommodation request stating she held a sincerely held religious belief that she could not wear an emblem that promoted or supported the LGBTQ+ community. (Ex 21, Rickerd accommodation request). The Commission, therefore, satisfies the first prong of its *prima facie* burden for Rickerd.

### B. Lawson and Rickerd Informed Kroger of Their Belief

#### 1. Lawson informed Kroger

It is undisputed that Lawson informed Kroger, through Maxwell and Riddley, that she objected to wearing the multicolored heart emblem because of her religious beliefs. (Ex 7, Lawson at pp. 35-36, 52). Kevin Lindsey and Andrea Wilson, the upper management in this case who made the decision to discharge Lawson, admit they were aware of Lawson's belief. (Ex 17, Lindsey fact deposition at pp 13-14 ; Ex 18, Wilson at pp. 31, 38). The Commission satisfies the second prong of its *prima facie* burden with regard to Lawson.

#### 2. Rickerd Informed Kroger

It is undisputed that Rickerd informed Kroger that she objected to wearing the apron with the multicolored heart emblem because of her religious beliefs. (Ex 8, Rickerd at pp. 9, 19-20). The upper management in this case who made the decision to discharge Rickerd, Kevin Lindsey and Andrea Wilson, admit they were aware of Rickerd's belief. (Ex 17, Lindsey fact deposition at pp. 13-14 ; Ex 18, Wilson at pp. 31, 38). The Commission satisfies the second prong of its *prima facie* burden with regard to Rickerd.

### C. Kroger Disciplined and Discharged Lawson and Rickerd

#### 1. Kroger Disciplined and Discharged Lawson

Kroger does not dispute that it disciplined and ultimately discharged Lawson for her failure to comply with its dress code. (See exhibits 15 and 16). Store Leader Maxwell testified the only reason for Lawson's termination was her failure to wear the apron with the multicolored heart emblem visible. (Ex 2, Maxwell at p. 101).

### 2. Kroger Disciplined and Discharged Rickerd

Kroger does not dispute that it disciplined and ultimately discharged Rickerd for her failure to comply with its dress code. (See exhibits 22 and 23). Store Leader Maxwell testified the only reason for Rickerd's termination was her failure to wear the apron with the multicolored heart emblem visible. (Ex 2, Maxwell at p. 101).

## II.   Kroger Cannot Meet the Undue Hardship Burden Because Accommodating Lawson and Rickerd Would Not Cause Kroger an Undue Hardship

Once the Commission establishes a *prima facie* case of religious discrimination, the burden shifts to Kroger to show "that it is unable to reasonably accommodate an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C.2000e(j). An employer must prove either that the employee was reasonably accommodated or that the employee could not be reasonably accommodated without undue hardship. *Harrell v. Donahue*, 638 F.3d 975, 980 (8th Cir. 2011) (*EEOC v. Chemsico, Inc.,* 216 F.Supp.2d 940, 950 (E.D.Mo.2002) (citing *Seaworth v. Pearson,* 203 F.3d 1056 (8th Cir.2000)). Since Kroger, by its own admission, failed to accommodate either Lawson or Rickerd (Ex 18, Wilson at p. 20), Kroger must show that doing so would have created an undue hardship.

As discussed below, Kroger does not raise undue hardship as a defense in its Amended Answer to the Commission's Amended Complaint. (See Doc. # 19). Kroger cannot meet this requirement as the undisputed facts show Kroger would have suffered no undue hardship.

In *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 85 (1977)*,* the Supreme Court held that to require the employer "to bear more than a *de minimis* cost" to accommodate the employee's religious beliefs is an undue hardship. To determine whether an accommodation would require the employer to bear more than a *de minimis* cost, "the circumstances under which a particular accommodation may cause undue hardship ... must be made in the particular factual context of

each case." *Chemsico,* 216 F.Supp.2d at 952. Because the evidence in this case shows Kroger would incur zero cost to accommodate the sincerely held religious beliefs of Lawson and Rickerd, no analysis of "de minimis cost" is necessary. (See exhibits 14 and 21, Lawson's and Rickerd's accommodation requests).

Kroger can also demonstrate undue hardship by showing that providing a religious accommodation would have caused more than a *de minimis* imposition on coworkers. *See Hardison, 432 U.S. at 80-81, 84.* "An accommodation creates an undue hardship if it causes more than a *de minimis* impact on co-workers." *Harrell, 638 F.3d at 980.* Although almost any religious accommodation will inevitably cause some differences in treatment among employees, "if accommodating an employee's religious beliefs also causes a 'real' and 'actual' imposition on co-workers, . . .Title VII does not require an employer to make such an accommodation." *Harrell, 638 F.3d at 980.*

Kroger has not and cannot put forth any evidence that allowing Lawson to cover the multicolored heart on her apron with her nametag or allowing Rickerd to buy and wear an alternate apron would cause a real and actual imposition on co-workers. Kroger has only articulated one reason for denying Lawson's and Rickerd's accommodation requests—Kroger did not intend its multicolored heart emblem to show support for the LGBTQ+ community. This defense is akin to a parent saying, "because I said so." While Kroger "says so" that its multicolored heart emblem is not related to support for the LGBTQ+ community, Kroger does not dispute that it supports the LGBTQ+ in several other ways as outlined in its press releases. (See exhibits 6 and 28).[4] At no time did Kroger consider what the multicolored heart emblem meant to Lawson and Rickerd—that the emblem, to them, represented support for the LGBTQ+ community which was contrary to their

---

[4] The Commission commends Kroger for its support of the LGBTQ+ community, but that is not the issue in this case.

religious beliefs. In light of the colors of the heart emblem, and in light of Kroger's press release approximately one month prior to the apron's release, Lawson's and Rickerd's association of Kroger's multicolored heart with support for the LGBTQ+ community is not unreasonable. In fact, several other employees in the store reached this same conclusion. (Ex 10, Brockman at p. 27; Ex 11, Uekman at pp. 16-18).

As previously discussed, neither Lawson nor Rickerd opposed Kroger's support of the LGBTQ+ community; they simply opposed Kroger's forcing them to wear a symbol contrary to their religious beliefs which implied their support along with Kroger's.

### III.   <u>Retaliation</u>

Kroger unlawfully retaliated against Lawson and Rickerd because of their opposition to conforming to Kroger's new dress code. Title VII protects employees from retaliation. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

The Eighth Circuit applies § 2000e-3(a) broadly to cover opposition to "employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Pye v. Nu Aire Inc*., 641 F.3d 1011, 1020 (8th Cir. 2011). Therefore, while requiring employees to conform to a dress code is not, in and of itself, unlawful, requiring employees to compromise their religious beliefs most definitely is.

To establish a Title VII retaliation claim, a plaintiff must show: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal

connection exists between the two." *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697, 702 (8th Cir. 2006).

### A.  Lawson and Rickerd Engaged in Protected Conduct

Reporting discrimination constitutes protected conduct. *Helton v. Southland Racing Corp*., 600 F.3d 954, 961 (8th Cir. 2010) (holding that reporting alleged harassment was protected conduct for purposes of a retaliation claim where the alleged harassment did not itself constitute an actionable wrong).

Lawson and Rickerd engaged in protected conduct when they opposed Kroger's dress code and then reported to Kroger that Kroger was discriminating against their religious beliefs by forcing them to wear an apron with an emblem that was contrary to their religious beliefs. Lawson and Rickerd further engaged in protected conduct when they requested a religious accommodation regarding the wearing of Kroger's apron. The opposition clause shields employees against discrimination because they opposed a practice made unlawful by Title VII. *Barker v. Missouri Dept. of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008). The Eighth Circuit "interpret[s] this provision to encompass actions that oppose employment actions that are not unlawful, "as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Id.* "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metropolitan Government of Nashville and Davidson County*, 555 U.S. 271, 276 (2009). And while the Eighth Circuit holds that merely requesting a religious accommodation  is not a protected activity in and of itself, the request becomes protected activity under the opposition clause when the employee communicates her opposition to a practice that she believes, in good faith, is unlawful. *Barker v. Mo. Dep't of Corr*., 513 F.3d 831 (8th Cir. 2008).

Kroger apparently believes that because it explained Kroger's meaning behind the multicolored heart emblem to Lawson and Rickerd on multiple occasions, Lawson and Rickerd could not possibly believe the emblem was associated with the LGBTQ+ community. Kroger ignores the fact that that is what the heart meant to them. Both Lawson and Rickerd demonstrated that they believed Kroger's actions were unlawful by forcing them to wear the apron they objected to on religious grounds. They both consulted with attorneys who informed them that Kroger was discriminating against them. Lawson consulted with her attorney son, and Rickerd consulted with an attorney in Texas. (Ex 7, Lawson at p. 62; Ex 8, Rickerd at pp. 148-150). Lawson and Rickerd complained both orally and in writing that Kroger was discriminating against them by forcing them to wear an emblem that conflicted with their religious beliefs. Kroger does not dispute that it understood both Lawson's and Rickerd's complaints were based on their belief that the multicolored heart emblem represented the LGBTQ+ community and that wearing the heart emblem violated their religious beliefs. (Ex 1, Riddley at pp. 40-41; Ex 2, Maxwell at pp. 37, 58, 61; Ex 17, Lindsey fact deposition at pp. 13-14 ; Ex 18, Wilson at pp. 31, 38; Ex 24, May 4 emails). The Commission, therefore, satisfies this first prong of its *prima facie* burden—that Lawson and Rickerd engaged in protected conduct.

### B.  Lawson and Rickerd Suffered an Adverse Employment Action

Establishing an adverse action requires the employee to show a materially significant disadvantage including "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects [as well as] circumstances amounting to a constructive discharge." *MacGregor v. Mallinckrodt, Inc*., 373 F.3d 923, 929 (8th Cir. 2004). Since it remains undisputed that Kroger disciplined Lawson and Rickerd to the point of termination, the Commission satisfies the second prong of its retaliation claim.

**C.  The Adverse Action Is Causally Linked to the Protected Conduct**

The disciplinary actions taken by Kroger against Lawson and Rickerd and their ultimate termination are causally linked to their refusal to wear the apron that violated their religious beliefs. Kroger admits it discharged Lawson and Rickerd for violation of the dress code, the dress code that required the wearing of the apron.  (Ex 2, Maxwell at p. 101).

There is evidence that other employees violated Kroger's dress code with regard to the apron, but Kroger did not discharge or even discipline these other employees, despite evidence that management knew these other employees were not following the dress code. (Ex 2, Maxwell at p. 68). For example, Maxwell testified he had several conversations with Jared Noah Judy because Judy would wear his white coat out on the floor covering his apron. (Ex 2, Maxwell at p. 65; Ex 9, Judy at p. 22) Kroger alleges it treated these other employees differently because they would ultimately conform to Kroger's dress code. (Ex 2, Maxwell at p. 69; Ex 30, Maxwell May 6 email).

Maxwell also reported to upper management that the other employees in Hogue's letter were not refusing to follow the dress code. (See exhibit 25). And per Paula Uekman, another associate who refused to wear the apron, no one vocalized their opposition to wearing the apron more than Lawson and Rickerd. (Ex 11, Uekman at pp. 51-52).

Lawson and Rickerd never pretended to acquiesce to Kroger's demands; they refused to compromise their religious beliefs by wearing Kroger's apron; therefore, in retaliation for their behavior, Kroger chose to discipline and discharge Lawson and Rickerd and ignore the employees who "pretended" to follow the dress code guidelines.

There is no evidence that Kroger would have discharged Lawson and Rickerd absent their refusal to follow the dress code due to their religious beliefs. Store Manager Maxwell testified that both Lawson and Rickerd were good employees and Kroger would not have discharged them but for their violations of the dress code. (Ex 2, Maxwell at p. 101). Other than Lawson's SIR in 2013 and Rickerd's SIR in 2010, neither Lawson or Rickerd had any subsequent discipline until they began complaining of religious discrimination and refusing to follow Kroger's dress code.

The causation standard requires the evidence to show that "but for" a retaliatory motive, the employer would not have taken the adverse action. *University of Texas Southwest Medical Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (holding that "but-for" causation is required to prove Title VII retaliation claims raised under 42 U.S.C. § 2000e-3(a), even though claims raised under other provisions of Title VII only require "motivating factor" causation). The "but-for" causation standard does not require that retaliation be the **"sole cause"** of the action. (emphasis added). There can be multiple "but-for" causes, and retaliation need only be *"a but-for"* cause of the materially adverse action for the employee to prevail. *Nassar* at 133 S. Ct. at 2534.

Because Kroger admits that "a but-for" reason exists as a reason for Lawson's and Rickerd's termination—that Lawson and Rickerd refused to follow a dress code they believed infringed on the religious beliefs  —the Commission has the necessary causal connection to satisfy this element of a retaliation claim.

## **CONCLUSION**

 The Commission provides compelling and unrebutted evidence that Kroger failed to accommodate the sincerely held religious beliefs of Lawson and Rickerd, that Kroger discharged Lawson and Rickerd because of their religious beliefs, and that Kroger discharged Lawson and Rickerd in retaliation for their continued refusal to submit to a policy that violated their religious

beliefs. Thus, the Commission requests that the Court enter judgment as a matter of law for the Commission.

Respectfully Submitted,

**CHRISTOPER LAGE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

*/s/Faye A. Williams*____
FAYE A. WILLIAMS
Regional Attorney

*/s/Amy F. Black*_____
AMY F. BLACK
Supervisory Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1407 Union Avenue, Suite 900
Memphis, TN 38104
Telephone (901) 685-4609
Telephone (901) 685-4606
faye.williams@eeoc.gov
amy.black@eeoc.gov

*/s/ Pamela B. Dixon*_____
PAMELA DIXON
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR 72201
Telephone (501) 900-6145
pamela.dixon@eeoc.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was filed electronically this date.

David Hogue
**Hogue Legal Services PLC**
575b Harkrider Ave.
Conway, AR 72032
T: (501) 514-0332
dh@hoguelegalservices.com

Faith C. Whittaker
Hayley L. Geiler
**Dinsmore & Shohl LLP**
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
T:  (513) 977-8200
Faith.whittaker@dinsmore.com
hayley.geiler@dinsmore.com

Cynthia W. Kolb
**Cross, Gunter, Witherspoon & Galchus, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
T: (501) 371-9999
ckolb@cgwg.com


January 18, 2022                                    /s/ Pamela B. Dixon
Date                                                      **PAMELA B. DIXON**