**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| | : | |
| | : | Civil Action No. 4:20-cv-1099-LPR |
| **Plaintiff,** | : | |
| v. | : | **KROGER'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO EEOC'S MOTION TO STRIKE DEFENDANT'S WITNESS KAELA GOODNIGHT** |
| | : | |
| KROGER LIMITED PARTNERSHIP I d/b/a KROGER STORE NO. 625. | : | |
| | : | |
| **Defendant.** | : | |

## KROGER'S MEMORANDUM IN OPPOSITION TO EEOC'S MOTION TO STRIKE DEFENDANT'S WITNESS KAELA GOODNIGHT'S DECLARATION

Defendant Kroger Limited Partnership I ("Kroger") files this Memorandum in Opposition of the Plaintiff EEOC's Motion to Strike the Declaration of Defendant's Witness Kaela Goodnight ("Goodnight"). The EEOC's frivolous motion is filed in bad faith in an attempt to strike evidence, which clearly undermines their claims. As will be explained below, the EEOC has been aware of Ms. Goodnight's involvement in enforcing the dress code policy, which led to Plaintiff Lawson's termination, since before filing the instant lawsuit.

Additionally, her name and her involvement was disclosed multiple times throughout the discovery process. Contrary to the EEOC's assertion, Plaintiffs clearly had knowledge of Goodnight's involvement and were well aware that she may have knowledge relevant to the Plaintiffs' claims. Thus, Kroger properly disclosed her identity and relevant knowledge, and its failure to amend its Initial Disclosures was substantially harmless.

I.  **<u>APPLICABLE LAW</u>**

Federal Rule of Civil Procedure 26, only requires supplementation of the initial disclosures: "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, **and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."** Fed. R. Civ. P. 26(e) (emphasis added). Contrary to the EEOC's blatant misrepresentation of law, the Eighth Circuit does not "require[] a party to inform the opposing party of a witness either through initial disclosures or amendment even if the witness has been referred to elsewhere during discovery." *See* Pl.'s Mot. p. 6 (claiming to cite *Troknya v. Cleveland Chiropractic Clinic,* 280 F.3d 1200 (8th Cir. 2002). In fact, Kroger could not find this alleged quotation in *Troknya,*[1] nor any case. To the contrary, under the explicit text of Rule 26, a party is not obligated under the rules to amend its initial disclosures to include additional witnesses when the information is made known to the opposing party during discovery. Fed. R. Civ. P. 26.

Under Rule 37(c)(1), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information, or witness, to supply evidence on a motion unless the failure was substantially justified, or is harmless. *See.* Fed. R. Civ. P. 26. The Eighth Circuit has cautioned that "the exclusion of evidence is a harsh penalty and should be used sparingly." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In evaluating a failure to disclose, the Eighth Circuit advises that courts should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information

---

[1] *Troknya* held that in specific circumstances, a defendant's use of an undisclosed witness may have unfairly prejudiced plaintiffs at trial, even if the witness was disclosed during discovery. *Troknya v. Cleveland Chiropractic Clinic,* 280 F.3d 1200 (8th Cir. 2002)

or testimony." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). The Advisory Committee Notes to Rule 37 include "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties" as an example of "harmless" conduct. Fed. R. Civ. P. 37(c) Advisory Committee Notes (1993). Additionally, numerous courts have held that a party's failure to disclose a witness under Rule 26 was harmless when the witness was known to the opposing party or became known through discovery. *See e.g. Walker-Swinton v. Philander Smith Coll.*, 2021 U.S. Dist. LEXIS 61914, at *15 (E.D. Ark. Mar. 31, 2021); *Graley v. TZ Ins. Sols., LLC*, No. 2:14-cv-636-FtM-CM, 2016 U.S. Dist. LEXIS 118893, at *9 (M.D. Fla. Sep. 2, 2016) (compiling cases).

II.   **ARGUMENT**

   a.   **KROGER PROPERLY DISCLOSED GOODNIGHT AS A WITNESS AND THE EEOC KNEW FROM THE OUTSET OF THE LAWSUIT THAT KAELA GOODNIGHT HAD RELEVANT KNOWLEDGE**

Kroger did not fail to comply with Fed. R. Civ. P 26 because Goodnight's identity and relevant knowledge was disclosed to the EEOC prior to and during the litigation. Kroger's Initial Disclosures specifically identified several witnesses who may have discoverable information and listed "[a]ny individuals identified in the EEOC's or Plaintiff's Rule 26(a)(1) Initial Disclosures or any individual identified by the parties in discovery." *See* Kroger's Initial Disclosures p. 2, attached as Exhibit 1.

Notably, in its Initial Disclosures on March 19, 2021, the EEOC produced numerous documents that showed that the EEOC had knowledge of Goodnight's identity, job title, and involvement in Plaintiff Brenda Lawson's termination since at least December 13, 2019. *See* EEOC's Initial Disclosures p. 4, attached as Exhibit 2. For example, the documents produced on

March 19, 2021 included the EEOC's notes from Lawson's interview with EEOC Investigator M.

Myers, dated December 13, 2019, which state:

> **May 5, 2019, Constructive Advice Record Signed by Kaela Goodnight [sic], Co-Manager** CP met with Goodnight, Co-Manager and Noah. Goodnight [sic] said she hated to do it, but because CP was not following the dress code, "I am going to have to write you up." CP said she understood Goodnight [sic] was doing her job, but CP was not going to take off the name tag. Goodnight [sic] gave CP a copy of the write-up. . . **Other than the meeting we have discussed, did you contact HR, union, other managers or others after the meeting with Goodnight [sic] and Noah?** No.

*See* Lawson's Interview Notes, EEOC_00000087, attached as Exhibit 3. Additionally, the notes

from EEOC Investigator M. Myer's interview of Store Manager Sean Maxwell state:

> **May 5, 2019, Constructive Advice Record (CA) It appears the CA was signed by Kaela Goodnight. Were you a decision maker in the May 5, 2019, CA record given to Lawson?** He believes he may have filled out the form. He thinks he was off that day and it was given to Lawson by Goodnight, Assistant Store Manager.

*See* Maxwell's Interview Notes, EEOC_0000505, attached as Exhibit 4.

Interestingly, despite the EEOC's assertion that it attached "no significance" to Goodnight's signature because the various write-ups also contained the signatures of Maxwell and Assistant Store Leader Caleb Dickey, the EEOC felt it worthwhile to interview and/or depose both Maxwell and Dickey. Pl.'s Mot., p. 4. During their initial investigation of the Charges, the EEOC interviewed Assistant Store Leader Caleb Dickey, regarding his job duties as ASL, issuance of discipline to Plaintiff Trudy Rickerd for violating the dress code, and whether other employees failed to wear the dress code. *See* Dickey's EEOC Notes, p. EEOC_0000517-0000519, attached as Exhibit 5. Notably, Dickey was also included on the EEOC's initial disclosures. Exh. 2, p. 3.

Therefore, even before the lawsuit was filed, the EEOC was aware that: (a) Assistant Store Leaders (ASL) were responsible for enforcing the Kroger policies, including the dress code; (b) Kaela Goodnight and Caleb Dickey were ASLs at the store during the relevant time period; (c) Goodnight and Dickey issued Plaintiffs Lawson and Rickerd discipline for refusing to follow the

dress code; and (d) Goodnight and Dickey had relevant knowledge about how the dress code was enforced and applied to other employees. [2]

Regardless, Kroger disclosed Goodnight's identity and relevant knowledge at multiple points throughout the discovery process. On April 30, 2021, Kroger produced Lawson's Constructive Advice Record (CAR) for refusal to follow the dress code dated May 5, 2019, which was issued by Kaela Goodnight and contained her signature.[3] Pl.'s Mot., Exh. 1. As explained in the EEOC's Motion, Brenda Lawson and Sean Maxwell discussed Goodnight's status as an Assistant Store Leader and her involvement in enforcing the dress code at their depositions on November 11, 2021 and November 12, 2021.[4] *See* ECF No. 36-6 (Lawson Dep.), pp. 46-48; ECF 36-5 (Maxwell Dep.), pp. 30, 80-82.

Although not mentioned in the EEOC's Motion, Kaela Goodnight was also discussed in the deposition of Paula Uekman, and the 30(b)(6) deposition of Kevin Lindsey. *See* ECF No. 36-14 (Uekman Dep.), p. 44; ECF No. 36-2 (30(b)(6) Dep.), pp. 10-11. Thus, Kroger did not violate Fed. R. Civ. P. 26 because Goodnight's identity and the fact that she had relevant knowledge about Kroger's enforcement of the dress code policy was disclosed during discovery and the EEOC was provided ample opportunity to depose Goodnight.

---

[2] The EEOC has argued from the outset of the case that Kroger did not apply the dress code policy equally. *See* ECF No. 1 (Pl.'s Compl.) ¶¶24(b)-(d); 42(b)-(d); Exh. 2, p. 4 ("Any persons who did not wear the apron with the emblem but whom Defendant did not discipline.") While Kroger refutes this incorrect assertion, the EEOC knew that the Assistant Store Leaders, who were responsible for enforcing the dress code policy, had information about how it was enforced.

[3] The CA was also produced to the EEOC at the Charge stage and was contained within the EEOC's Initial Disclosure production. *See* EEOC's Production CA, Exhibit 6.

[4] As noted by the EEOC, discovery in this case closed over a month later on December 17, 2021.

b.  **EVEN IF KROGER HAD FAILED TO DISCLOSE GOODNIGHT, THE NON-DISCLOSURE WAS HARMLESS**

Even if Kroger had failed to disclose Goodnight, the non-disclosure was harmless, and the Court should not strike her declaration. As explained above, Kroger clearly disclosed Goodnight's identity and involvement during discovery. However, even though it was not specifically disclosed in the Initial Disclosures, Kroger reasonably believed that the EEOC was aware of her identity and relevance because: (1) it was explicitly discussed in the EEOC's interview notes from its initial investigation, which was produced as part of its Initial Disclosures in March of 2021; and (2) Goodnight's identity and involvement was repeatedly discussed in Plaintiff Lawson's deposition and three other depositions, and was included on a critical disciplinary document.

As such, Goodnight's identity and the fact that she had relevant knowledge of the facts could hardly be determined as a surprise to the EEOC, as they knew about Goodnight's involvement almost a year prior to filing the lawsuit, and Goodnight was discussed in depositions nearly a month prior to the close of discovery. Contrary to the EEOC's assertion, they had ample opportunity to depose Goodnight prior to the close of discovery and failed to do so. As such, the alleged non-disclosure was harmless.

While the EEOC attempts to claim that it did not know Goodnight "possessed crucial information" which it did not know about, the EEOC fails to explain what crucial information was withheld from them, or how it would have changed its decision not to depose Goodnight.[5] EEOC's Mot. p. 6. The EEOC undeniably knew prior to and throughout discovery that: (1) Goodnight was an Assistant Store Leader at Store 3605 around the relevant time period; (2) Assistant Store Leaders were responsible for enforcing Kroger policies, including the dress code; (3) Goodnight

---

[5] EEOC vaguely asserts that Goodnight's testimony contradicts Maxwell's testimony, but fails to explain how. *See* Pl.'s Mot. p. 7. It does not.

had at least one discussion with Brenda Lawson about her duty to comply with the dress code policy; (4) Goodnight issued Lawson discipline related to her failure to comply with the dress code; and (5) Lawson was terminated as a result of the progressive discipline related to her refusal to wear the uniform.

Despite this understanding, for some inexplicable reason, the EEOC did not "attach any significance" to Goodnight's knowledge, and it chose not to depose her to inquire further. While the EEOC may have irrationally chosen to disregard this knowledge, any prejudice that resulted was a result of the EEOC's decision not to depose a well-known witness, not from Kroger's failure to specifically list Goodnight as a witness on its Initial Disclosures. Once a relevant witness is disclosed, it is the duty of the opposing party to investigate the extent of their knowledge with due diligence. *Graley v. TZ Ins. Sols., LLC*, No. 2:14-cv-636-FtM-CM, 2016 U.S. Dist. LEXIS 118893, at *9 (M.D. Fla. Sep. 2, 2016).

Moreover, the EEOC's assertion that they did not recognize the value of identifying the store management responsible for enforcing the dress code policy is absurd, considering that it was a topic of inquiry on their 30(B)(6) deposition notice. *See* Notice of Deposition, p. 2, attached as Exhibit 7. ("2. The management personnel at Kroger Store 625 from April 2019 until July 2019, and the name, location, and job title of the person to whom each management personnel at Kroger Store 625 reported.") As such, it is clear that the EEOC understood the importance of identifying the managers involved with enforcing the Kroger dress code policy, which they incorrectly claim was discriminatorily enforced.

Further, Goodnight's Declaration does not, and will not, affect the efficiency of trial simply because the EEOC chose not to depose her. Nor does the EEOC provide any explanation of why

it should be permitted to reopen discovery to depose a witness that they knew about for nearly two years before discovery closed.

Moreover, Goodnight's testimony is critical to establish that Kroger's defenses that it did not discriminate or retaliate against Plaintiffs, and should not be excluded in the balance of justice. Accordingly, based on the factors articulated in *Wegener*, Goodnight's Declaration should not be excluded under Fed. R. Civ. P. 37. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *see e.g. Zumba Fitness, LLC v. ABF Logistics, Inc.*, No. 2:15-cv-02151, 2016 U.S. Dist. LEXIS 116298, at *9 (W.D. Ark. Aug. 30, 2016) (refusing to strike a witness's affidavit when the witness was identified during a deposition and his signature was on documents relevant to the case); *Jenkins v. Med. Labs. of E. Iowa, Inc.*, 880 F. Supp. 2d 946, 956 (N.D. Iowa 2012) (finding failure to disclose was justified and harmless when the witness was identified in three depositions and opposing party failed to show that earlier disclosure would have enabled it to more efficiently resist the Motion for Summary Judgment); *Green v. Logan's Roadhouse, Inc.*, 2014 U.S. Dist. LEXIS 167372, 2014 WL 6871196 (S.D. Miss. Dec. 3, 2014) (refusing to strike a witness when the opposing party knew of the witness's identity and alleged role in the events throughout the discovery period). Accordingly, the Court should deny the EEOC's Motion to Strike Goodnight's Declaration.

III.   **CONCLUSION**

The record clearly shows that the EEOC was aware of Goodnight's identity and relevant knowledge throughout the entire discovery period, and unjustifiably failed to depose her. Further, at all times, Kroger proceeded in good faith and did not attempt to hide or withhold Goodnight's identity. To the contrary, Kroger provided both documents and witness testimony, which identified

Goodnight as a relevant witness. Not to mention, that Plaintiff Lawson provided testimony, which identified her as a relevant witness.

Ironically, the EEOC now files this Motion to Strike wrongfully accusing Kroger of engaging in misconduct in an obviously bad faith attempt to excuse their own failure to depose a relevant witness, whose identity and involvement they discovered prior to filing suit, and nearly two years before the close of discovery. As a result, Kroger respectfully requests that the Court deny the EEOC's Motion to Strike and award Kroger attorney's fees and costs for the time incurred responding to this Motion.

Respectfully submitted,

Faith C. Whittaker, Admitted Pro Hac Vice
Hayley L. Geiler, Admitted Pro Hac Vice
Attorneys For Defendant
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
T:  (513) 977-8200
F: (513) 977-8141
Faith.whittaker@dinsmore.com
Hayley.geiler@dinsmore.com

Cynthia W. Kolb, AB#2000156
Cross, Gunter, Witherspoon & Galchus, P.C.
Attorneys For Defendant
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
T: (501) 371-9999
F:  (501)371-0035
Ckolb@cgwg.com