IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) PLAINTIFF ) ) And ) ) BRENDA LAWSON and TRUDY RICKERD ) ) PLAINTIFF INTERVENORS ) ) v. ) ) KROGER LIMITED PARTNERSHIP I ) d/b/a KROGER STORE NO. 625, ) ) DEFENDANT. ) | CASE NO. 4:20-CV-01099 |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Equal Employment Opportunity Commission (Commission or Plaintiff) submits this Reply to Defendant Kroger's Response to Plaintiff's Motion for Summary Judgment. (Doc. No. 47). The Commission intends brevity, but Kroger's inaccurate citations to case law and misstatement of the correct legal standard to apply to a plaintiff's sincerely held religious belief require the Commission's Reply.

**Kroger Applies an Erroneous Legal Standard for
Judging a Sincerely Held Religious Belief**

Kroger bases its entire argument for its failure to accommodate Lawson and Rickerd on its assertion that Plaintiff-Intervenors hold "irrational beliefs" that Kroger's multicolored heart

1

emblem represents support for the LGBTQ+ community and therefore conflicts with Intervenors' sincerely held religious belief that homosexuality is a sin. (Doc. No. 47 at pp. 2-3). Because Kroger asserts that Lawson's and Rickerd's beliefs were "irrational," Kroger argues that Title VII does not require it to accommodate their sincerely held religious beliefs by granting an exemption from wearing the One Promise symbol and that the Commission seeks to expand Title VII to require the accommodation. (Doc. No. 47 at p. 3).

Kroger cites a single case for the proposition that Lawson's and Rickerd's beliefs must be "reasonable," and that case does not apply. Kroger incorrectly cites *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383 (9th Cir. 1984), as an Eighth Circuit case for the proposition that "[t]he case law is clear that it is the Plaintiff's burden to establish an **actual** conflict between their (sic) religious belief and the employment requirement." (Doc. No. 47 at p. 3) (emphasis added). First, *Bhatia* is not an Eighth Circuit case but a Ninth Circuit case. Second, the Commission finds no such reference to Kroger's assertion in *Bhatia*. Third, in *Bhatia*, the plaintiff was a devout Sikh, (whose religion forbid the cutting or shaving of any body hair) who told Chevron he could not comply with its safety policy of shaving to achieve an air-tight face seal when wearing a respirator to avoid potential toxic gas exposure. Fourth, in *Bhatia,* unlike Kroger, the employer made good-faith efforts to accommodate Bhatia's religious belief. The employer offered Bhatia several accommodations, which he rejected. To repeat, here Kroger did not offer Lawson or Rickerd any accommodation. Instead, Kroger disciplined them, denied them any accommodation, and terminated their employment in retaliation for their opposition to wearing the emblem.

Regardless of Kroger's misapplication of *Bhatia*, the Supreme Court has rejected Kroger's position. *See Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682, 724 (2014)

("Repeatedly and in many different contexts, we have warned that courts must not presume to determine ... the plausibility of a religious claim."); *Thomas v. Review Bd. of Ind. Employment Security Div.,* 450 U.S. 707, 714 (1981) (Whether a belief is a protected religious belief under Title VII does not depend on whether it is "acceptable, logical, consistent, or comprehensible to others"). Religious practices include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. 29 C.F.R. § 1605.1.

So while the truth of Lawson's and Rickerd's belief is not open to question, there can be a question of whether it is sincerely held. *United States* v. *Seeger*, 380 U.S. 163, 185 (1965). Since Kroger does not dispute the sincerity of Lawson's and Rickerd's religious beliefs (Doc. No. 36. pp. 3, 8, 12), Kroger's inability to understand their beliefs is not relevant.

EEOC's sub-regulatory guidance states that **"the employer's duty to accommodate will usually entail making a special exception from, or adjustment to, the particular requirement that creates a conflict so that the employee or applicant will be able to observe or practice his or her religion. Accommodation requests often relate to work schedules, dress and grooming, or religious expression or practice while at work." 2 Compl. Man. 12-IV-A-1.

EEOC's Guidance, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), citing *General Electric Co. v. Gilbert,* 429 U.S. 125, 141-42 (1976), quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944). See also *Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000) (stating that although interpretations in enforcement guidances lack the force of law and do not warrant *Chevron*-style deference; they "are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, (1944) but only to the extent that those

interpretations have the 'power to persuade,' *ibid."* ). *Christensen v. Harris Cnty.,* 529 U.S. 576, 587 (2000).

Once Kroger learned that Lawson and Rickerd objected on religious grounds to wearing the Our Promise symbol on the apron uniform, under Title VII, Kroger had an obligation to attempt to accommodate the religious beliefs of Lawson and Rickerd absent undue hardship. Kroger did not attempt an accommodation because it believed Lawson's and Rickerd's perception of a conflict between their religious beliefs and the work uniform was an "irrational assumption."

Recently, the Supreme Court restated, "[r]epeatedly and in many different contexts, we have warned that courts must not presume to determine ... the plausibility of a religious claim." *Fulton v. City of Philadelphia, PA*, U.S. 141 S.Ct. 1868, 1910 (2021). The Commission, therefore, does not seek to expand Title VII's requirements for religious accommodations; the Commission simply seeks to enforce the existing requirements.

Kroger argues it did not need to provide an accommodation because Plaintiff-Intervenors never explained a religious basis or rational basis for their belief that the Our Promise symbol was an LGBTQ+ symbol. (Doc. No. 47 at p. 7). As discussed above, Title VII does not require that Plaintiff-Intervenors provide a rational basis for their beliefs; however, they informed Kroger about their religious beliefs and their perception of a conflict between those beliefs and wearing the Our Promise symbol. Both Lawson and Rickerd told Kroger many times that "homosexuality" violated their religious beliefs, they both quoted Bible verses in support of their belief, and Rickerd informed Kroger that God spoke to her in her heart and told her not to wear the apron. References to the Bible and God expressed Lawson's and Rickerd's sincerely held religious beliefs.

4

**The EEOC Does Not Seek to Punish Kroger for Creating and Maintaining Diversity and Inclusion Initiative but Seeks to Hold Kroger Liable for its Failure to Provide a Reasonable Accommodation Absent Undue Hardship as Required by Title VII**

Contrary to Kroger's assertions, the Commission does not seek to "punish Kroger for creating and maintaining diversity and inclusion initiatives because they may offend employees' anti-LGBTQ beliefs." (Doc. No. 47 at p. 4). The Commission simply seeks to hold Kroger accountable for its failure to provide a reasonable accommodation to Lawson and Rickerd as required by Title VII because Kroger cannot show undue hardship.

In *Brennan v. Deluxe Corp.*, No. 18-2119, 2021 WL 2155004, at * 5-7 (D. Md. May 27, 2021), the plaintiff refused to respond to questions on an online EEO training module in a way that acknowledged equal rights for transgender workers. He requested a religious accommodation based on his sincerely held Christian belief. The court held that his belief was sincerely held and denied summary judgment on his failure-to-accommodate claim. *See also Buonanno v. AT&T Broadband LLC*, 313 F. Supp. 2d 1069 (D. Colo. 2004) (also denying summary judgment where defendant failed to accommodate religious beliefs of a Christian plaintiff who refused to certify that he would comply with the employer's diversity policy). In these cases, as here, there was no question that the plaintiffs held sincere religious beliefs, and the courts effectively balanced the employer's need to provide EEO or diversity training with individual employees' sincerely held religious beliefs. In *Brennan*, as here, the defendant offered no sort of accommodation. The court held that undue hardship was a jury question in this particular case.[1]

---

[1] *But see* 2 Compl. Man. 12-IV-C-7, Example 55 (excusing an employee from general EEO training because of a religious objection would generally pose an undue hardship).

In many of the cases cited by Kroger in its attempts to persuade this Court to grant its motion for summary judgment, the employer tried to accommodate the employee's religious belief. (See Kroger's Motion for Summary Judgment, Doc. No. 34.)[2] Kroger's own assertion that it engaged in the interactive process is disingenuous. (Doc. No. 47 at p. 6). The purpose of the interactive process is to determine if an accommodation acceptable to both the employer and the employee can be reached. Since Kroger never discussed a possible accommodation with either Lawson or Rickerd, Kroger failed to engage in the interactive process. Lawson asked Kroger to allow her to wear an apron without the heart emblem, which she would purchase herself, she asked to turn down the bib of the apron so the heart emblem would not show, and she asked to wear her nametag over the heart emblem. Rickerd asked to purchase her own apron, one without the multicolored heart emblem. Kroger never discussed these requested accommodations with Lawson or Rickerd.

The employer violates the statute unless it "demonstrates that [it] is unable to reasonably accommodate ... an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986), quoting 42 U.S.C. § 2000e(j). Here, Kroger never considered accommodating the sincerely held religious beliefs of Lawson and Rickerd—an accommodation that would have caused no disruption in the workplace and an accommodation that was so simple to provide. Kroger did not even engage in an interactive process with Plaintiff-Intervenors, so at a minimum, there is a

---

[2]*See Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382 (8th Cir. 1984); *Chrysler Corp. v. Mann*, 561 F.2d 1282 (8th Cir. 1977); *Harrell v. Donahue*, 638 F.3d 975 (8th Cir. 2011); *Wilson v. U.S. W. Commc'ns*, 58 F.3d 1337 (8th Cir. 1995); and *TWA v. Hardison*, 432 U.S. 63 (1977).

question of fact about its undue hardship defense. The court should grant EEOC summary judgment on the failure-to-accommodate claim.

### Plaintiff Does Not Question Kroger's Legitimate Business Decision to Require Employees to Wear the Uniform Apron, Rather Plaintiff Questions Kroger's Refusal to Provide a Reasonable Accommodation

The Commission has not asserted in any brief filed in this case, either in its motion for summary judgment or in its response to Kroger's motion for summary judgment, any argument questioning Kroger's "legitimate business decision" to require employees to wear the uniform apron. Again, the Commission questions Kroger's refusal to consider and provide a reasonable accommodation to the sincerely held religious beliefs of Lawson and Rickerd. Kroger never considered the accommodations suggested by Lawson and Rickerd.

### Kroger Only Disciplined Lawson and Rickerd Although Other Employees Failed to Comply with the Apron Uniform

Kroger states, "EEOC does not have a scintilla of evidence to prove that a Kroger manager saw an employee who was not compliant and failed to address the issue with the employee." (Doc. No. 47 at p. 10). Kroger chooses the testimony favorable to its assertion and ignores other testimony that is not. While Paula Uekman testified that she did not know for sure if management officials saw violations of the dress code about the apron, Jeannetta Brockman testified that she pointed out non-compliant employees to management officials, and management officials ignored the noncompliance. (Ex 1, Brockman at pp. 25-26). Logic dictates if management is repeatedly asking an employee to comply with the dress code, its "oral counseling" is not effective and movement to another stage of discipline is required---since that is what Kroger did with Lawson and Rickerd.

7

### Kroger's Allegation That Plaintiff-Intervenors' Actions Caused a Disruption in the Workplace Is Not Factually Accurate

Kroger argues that the beliefs of Lawson and Rickerd caused a disruption in the workplace. (Doc. No. 47 at pp. 9, 11). Kroger confuses accommodating a sincerely held religious belief with disruption in the workplace; it is the accommodation that must cause the disruption when asserting undue hardship, not the belief. There is no evidence that Kroger ever disciplined Lawson or Rickerd for causing "a disruption in the workplace." At the very least, this issue becomes a material question of fact.

As acknowledged by Kroger in its response to Plaintiff's motion for summary judgment (Doc. No. 47 pp. 10-11), Lawson and Rickerd both testified they harbored "no ill feelings against the 'LGBTQ" community' and "never exhibited any improper conduct against employees because they were members of the LGBTQ+ community." As discussed in Plaintiff's response to Defendant's motion for summary judgment (Doc. No. 49 at pp. 3, 14), Lawson and Rickerd were hardly the only employees at Store 625 who objected to wearing Kroger's apron because of their religious beliefs. They also were hardly the only employees at Store 625 who discussed this issue. For Kroger to now place any alleged disruption solely on the shoulders of Lawson and Rickerd is simply not factually accurate.

Significantly, while continuing to discipline Lawson and Rickerd for violating Kroger's dress code, Kroger never disciplined Lawson or Rickerd for "disruptions" in the workplace.

### CONCLUSION

Because Kroger has misstated the legal standard and raised no material questions of fact in response to EEOC's Motion for Summary Judgment, the Commission asks this Court to grant EEOC's motion.

Respectfully Submitted,

**CHRISTOPER LAGE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730

AMY F. BLACK
Supervisory Trial Attorney
TN Bar No. 016104

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

1407 Union Avenue, Suite 900
Memphis, TN 38104
Telephone (901) 685-4609
Telephone (901) 685-4606
faye.williams@eeoc.gov
amy.black@eeoc.gov

*/s/ Pamela B. Dixon*
PAMELA DIXON
Senior Trial Attorney
AR Bar No. 95098

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
820 Louisiana St., Suite 200
Little Rock, AR 72201
Telephone (501) 900-6145
pamela.dixon@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was filed electronically this date.

David Hogue
**Hogue Legal Services PLC**
575b Harkrider Ave.
Conway, AR 72032
T: (501) 514-0332
dh@hoguelegalservices.com

Faith C. Whittaker
Hayley L. Geiler
**Dinsmore & Shohl LLP**
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
T:  (513) 977-8200
Faith.whittaker@dinsmore.com
hayley.geiler@dinsmore.com

Cynthia W. Kolb
**Cross, Gunter, Witherspoon & Galchus, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
T: (501) 371-9999
ckolb@cgwg.com


February 23, 2022                                             */s/* Pamela B. Dixon
Date                                                                    **PAMELA B. DIXON**